MARY F. COOPER

v.

EMMA B. GUM *et al.*

*Filed at Springfield April 2, 1894.*

1. EQUITY—*cancellation of instrument void at law.* A court of equity will entertain a bill to cancel an instrument void at law, if the invalidity of the same does not appear upon its face.

2. DECREE IN EQUITY—*power of court over, when entered in vacation.* A decree entered in vacation remains under the control and jurisdiction of the court until the close of the term next succeeding its entry.

3. DEEDS—*when canceled for failure of consideration.* A court of equity will cancel a deed made in consideration of an agreement to support the grantor during life, if the grantee fails to perform such agreement.

APPEAL from the Circuit Court of Menard county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. CHARLES NUSBAUM, and Mr. W. H. MASTERS, for the appellant :

A suit in ejectment was pending, had been tried, and the issues found for this appellant, and the court takes jurisdiction in chancery, over the protest of appellant, and, without warrant or authority, ousts the court of law of its jurisdiction. This was not proper. *Whitney* v. *Stevens*, 97 Ill. 487; 12 Am. & Eng. Ency. of Law, 292, note.

There was no matter or thing stated in complainant's bill which brought the case within the exceptions to the rule. *Ross* v. *Buchanan*, 13 Ill. 55; 1 Pomeroy's Eq. Jur. secs. 177, 179; *Mason* v. *Piggott*, 11 Ill. 85.

The delivery of the deed was necessary before any title passed, and if never delivered no title passed, and appellees had an adequate and complete remedy at law. *Sturtevant* v. *Sturtevant*, 116 Ill. 357.

Mr. T. W. McNEELY, and Mr. N. W. BRANSON, for the appellees:

Where one conveys his real estate and property to another person, in consideration that such other person will support and maintain the grantor during his natural life, and the grantee afterwards refuses to perform his contract for such support and maintenance, a court of equity will grant relief by rescinding the contract and canceling the deed. *Kusch* v. *Kusch*, 143 Ill. 353; *Frazier* v. *Miller*, 16 id. 48; *Oard* v. *Oard*, 59 id. 46; *Rockafellow* v. *Newcomb*, 57 id. 186; *Jones* v. *Neely*, 72 id. 449; *Sturtevant* v. *Sturtevant*, 116 id. 340.

The delivery of a deed to a third party, to be retained until the death of the grantor and then delivered to the grantee, will pass the title to the grantee at the grantor's death. *Stone* v. *Duvall*, 77 Ill. 475.

A defendant to an action of ejectment may resort to a court of equity to restrain the prosecution of such action, where he has some equitable defense of which a court of law cannot take cognizance, either from want of jurisdiction or from the infirmity of legal process. *Catholic Bishop* v. *Chiniquy*, 74 Ill. 317; *Koester* v. *Burke*, 81 id. 436.

Mr. JUSTICE SHOPE delivered the opinion of the court:

Appellant brought ejectment in the Menard circuit court, against appellees, to recover certain lots in the town of Petersburg, in said county. A trial resulted in a judgment for the plaintiff in ejectment. Defendants took a new trial under the statute, and filed this bill

against appellant to set aside and remove as a cloud from the title of appellee Emma B. Gum to said lots, a deed from Nancy Clark to appellant, Mary F. Cooper, (formerly King,) dated July 27, 1887, and to enjoin said ejectment suit, etc. On hearing the circuit court decreed in accordance with the prayer of the bill, and the defendant in the chancery suit prosecutes this appeal.

It is first objected that the court erred in overruling a demurrer to the bill after several amendments had been made thereto. After the overruling of the demurrer the defendant answered, and the cause proceeded to a hearing upon the bill and answer as they then stood. Without pausing to discuss the effect of filing an answer to a bill, insufficient on its face to give the court jurisdiction, after the overruling of a demurrer, it is sufficient to say, in this case, that in and by subsequent amendment of the bill the objection insisted upon on demurrer was obviated, and if such amendment was properly allowed, appellant was in nowise prejudiced. The particular matter insisted upon is, that the bill did not allege a delivery of the deed from Mrs. Clark to the defendant, (appellant,) but, on the contrary, alleged, in effect, that it had not been delivered, and this being so, it could be shown on the trial of the ejectment proceeding and defeat a recovery by the plaintiffs under that deed, and that there was therefore a complete and adequate remedy at law. Formerly, doubt was expressed whether a court of equity would exercise jurisdiction and decree the cancellation of instruments void at law, since the legal remedy was complete and adequate ; but it is now well settled that courts of equity will entertain bills for that purpose where the invalidity of the instrument does not appear on its face. Of this nature are bills to remove clouds from title, and the like. (3 Pomeroy's Eq. Jur. 1377.) Without determining the correctness of this contention, the court permitted an amendment of the bill, alleging the delivery of the deed, and, as before seen, obviating the objection.

It is, however, insisted that the court erred in permitting amendment to the bill at the term of court next succeeding the rendition of the decree in vacation. It appears that after the hearing the court took the case under advisement and filed its decree in vacation. At the next term of court appellant moved to vacate the decree, and appellees for leave to amend the bill to conform to the findings of the court. The court refused to vacate the decree, but allowed amendments to be made. This was not error. By section 30, chapter 37, of the Revised Statutes, when a cause or matter is taken under advisement and is decided in vacation, "the judgment, decree or order therein may be entered of record in vacation," but it is expressly provided that "such judgment, decree or order may, for good cause shown, be set aside or modified or excepted to at the next term of the court, upon motion," etc. In *Hook* v. *Richeson,* 115 Ill. 431, in construing this statute, it was held that the decree entered in vacation, although of record, was *in fieri,* and could not become final until after the expiration of the succeeding term, and then only as modified, if modified, and approved at that term. It is apparent that until the close of the term next succeeding the entry of the judgment, decree or order in vacation, the proceeding remains under the control and jurisdiction of the court, and it has the same power over it as it would have during a term of court at which its judgment, decree or order had been rendered. It follows, therefore, that the court had power, to be exercised according to its judicial discretion, to permit such amendment to the bill as was necessary to support the decree.

It is lastly objected that the decree is not warranted by the evidence. No good purpose would be served by a discussion of the facts proved, and it must suffice that we have carefully considered each fact and circumstance, and are of opinion that the preponderance of the evidence clearly establishes that the deed from Nancy Clark to appellent was made in consideration of the agreement of

the grantee to live with, support, maintain and care for Mrs. Clark, in her home, during her natural life. It is true, the evidence is conflicting; but when it is considered in the light of subsequent conduct of appellant and cotemporaneous circumstances proved, it strongly preponderates in favor of the finding of the circuit court that such agreement was the sole consideration for the making of the deed.

Within a few days after the execution of the deed appellant moved into the house on the premises, with her mother, and remained there about two months, when she left and went to Sangamon county and never afterward returned, or, so far as shown, contributed in anywise to her mother's maintenance, care or support. Indeed, the letters, from time to time, from appellant to her sister, the appellee Emma B., with whom she was apparently then on the most friendly relations, show that she entertained toward her mother the most bitter and rancorous feeling. No conduct is shown on the part of the mother, even if the testimony of appellant alone be considered, that would be an excuse or justification for the failure on the part of appellant to perform her agreement. While she testifies that her mother was cross and would scold, she expressly says "there was no trouble between mother and me." She also says, "I went away because we could not get along." She intimates, rather than says, that what difficulty there was, originated from the intermeddling of appellees, and testifies that she offered to support her mother and care for her if she would go away to live with her elsewhere, and that her mother declined to do so. Both of these positions are negatived by the feeling clearly shown to exist on the part of appellant toward her mother and sister. The court was amply justified in finding that appellant, without any legal excuse or justification, abandoned her mother, and failed and refused to comply with or fulfill the terms of her agreement to support, maintain, care for and live with her mother.

It is well settled in this State, that where one has conveyed property to another person in consideration of the support and maintenance of the grantor during his or her natural life, and the grantee refuses to perform his or her agreement, a court of equity will grant relief by rescinding the contract and canceling the deed. The contract here shown was to support, maintain, care for and live with her mother by appellant during the natural life of the former, and appellant, having failed to keep her agreement in that regard, cannot be permitted to retain the title conveyed to her upon the faith of such agreement. And as said by this court in *Oard* v. *Oard,* 59 Ill. 46 : "If the rescission of the contract cannot be referred .to any other head of equity jurisdiction, it would be proper to presume that it was made in the first instance with a fraudulent intent." See, also, *Kusch* v. *Kusch,* 143 Ill. 353 ; *Jones* v. *Neely,* 72 id. 449 ; *Rockafellow* v. *Newcomb,* 57 id. 186 ; *Frazier* v. *Miller,* 16 id. 48.

It appears that after the abandonment of the mother by appellant, in October, 1887, the former continued to live in her home, having with her another daughter, at least a portion of the time. On the 13th of December, 1888, Mrs. Clark, having arranged with appellees to live with and maintain her, went with Mrs. Gum to one Blane, in whose hands the deed from Mrs. Clark to appellant had been placed, and demanded the surrender of that deed to her. It is clear that said deed had never been delivered to appellant, and was not to be delivered to her until after the death of the grantor. It was agreed between appellant and her mother that Blane should retain the deed in his custody, and deliver it after the death of the grantor, only. This, Blane testifies, was definitely and particularly understood. There is evidence tending to show that the mother stated, in the presence of appellant, that it was so left undelivered as security, on the part of appellant, for the performance of her agreement to live with, support and maintain her mother. Independently of this,

however, it clearly appears that by the contract of the parties to the deed it was not to be delivered during the lifetime of the grantor. Upon demand being made by Mrs. Clark for its surrender, Blane declined to deliver it to her without the consent of appellant. Thereupon Mrs. Clark told him, in effect, that the arrangement under which the deed was executed had been abrogated, and she had made other arrangements, and desired to deed the property to Mrs. Gum. At her instance Blane drew a deed conveying the property to Mrs. Gum, which was executed, acknowledged and delivered, and immediately placed upon record. That she understood that the contract between herself and appellant had been rescinded, and intended, so far as she was able, to render the rescission complete, cannot be questioned, and her conduct in this regard effectually repels the imputation that the deed to Mrs. Gum was obtained without Mrs. Clark knowing the nature and contents of the same.

The chancellor was warranted by the evidence in finding that appellant, prior to the execution of this deed, knew that Mrs. Clark intended to arrange with Mrs. Gum to live with and take care of her, and acquiesced in the arrangement without asserting any claim or right under the deed to her. Mrs. Gum so testifies, in effect, and while it is denied by appellant, the concurring circumstances warranted belief in the testimony of the former. Appellant testifies that there was no trouble between her and her mother, but that upon her mother going down to Mrs. Gum she would return angry and vicious. It was not because of trouble with her mother that she left, but because she was thus kept in a fuss and difficulty. Yet as early as February, 1888, we find her writing affectionate letters to Mrs. Gum, in which she addresses her as "Dear Sister Em," expressing gladness at the receipt of letters, inviting visits, etc., while she denominates her mother the hardest and cruelest of mothers in the world, and expresses doubts as to her having a soul. It appears,

and is not controverted, that Mrs. Gum, in September before the making of the deed to her, made appellant a week's visit, when, as Mrs. Gum testifies, the whole matter was talked over, and appellant said that she never expected to fulfill her contract with her mother and had given it up altogether. In January, 1889, Mrs. Gum wrote a letter to appellant, informing her of the execution of the later deed, which appellant admits receiving and that it contained that information. On the 3d of July, following, appellant wrote Mrs. Gum as follows: "I was not surprised to hear you had moved in with ma. I heard some time ago she wanted you to go in there with her. I am glad you are there. You are welcome to all she has got. She told me I should never have a nickel, so I do not expect it. I was never treated as a daughter. She was always taking everything she could from me and giving to the rest of you. It never made any difference for Fan."

Appellees, immediately following the execution of the deed to Mrs. Gum, moved upon the premises, put them in repair and made lasting and valuable improvements, at an expense of several hundred dollars, and, so far as this record shows, provided Mrs. Clark with a home until her death, July 30, 1891. It is true, appellant denies that she knew that appellees were making improvements upon the property until after they were made. It is not controverted, however, that she knew that appellees were living with, caring for and supporting her mother under the arrangement, in consideration of which the property had been deeded to Mrs. Gum. She certainly knew, as early as the summer or fall of 1889, that they had made valuable improvements upon the premises, yet it is not pretended that at any time prior to the death of her mother she made any pretence to having any claim or right under the deed to her, but permitted appellees to go on and fulfill their contract, under the belief, induced by her representations as well as by the conduct of the mother, that she in fact had no claim or right thereunder.

In October, 1891, appellant brought her action of eject-
ment, as before mentioned, and procured the passing of
the deed from the hands of Blane into her own.    Under
the circumstances here shown the procuring of the deliv-
ery from Blane to herself of the deed was a fraud upon
the rights of appellees.   She had paid nothing for the
conveyance of the land to her, and had induced appellees
to act to their prejudice, upon the faith of her representa-
tions that she had and claimed no right in the property in
question.    Appellees, having succeeded to all the rights
of Mrs. Clark, were clearly entitled to have the deed to
appellant, which she thus inequitably obtained, as against
them, removed as a cloud from their title, and the further
prosecution of the action at law perpetually enjoined.
    The decree of the circuit court will be affirmed.

*Decree affirmed.*