BRIDGET SULLIVAN, Appellant, v. PATRICK SULLIVAN and
SUSAN SULLIVAN, Appellees.

**Appeal:** SERVICE OF NOTICE.   Failure to serve notice of appeal upon
1  parties whose rights cannot be prejudicially affected by the
appeal does not go to the question of jurisdiction.

**Demurrer:** WAIVER OF RULING.   A ruling sustaining a demurrer which
2  does not reach all matters presented for hearing and determina-
tion is not waived by proceeding to trial.

**Dower:** WHEN BARRED BY HUSBAND'S ACT.   Where the express con-
3  sideration for land conveyed to a husband is his performance of
certain conditions subsequent, in default of which the same shall
revert to the grantor, a reconveyance by the husband because
of his default deprives the wife of a dower interest in the prop-
erty, although she did not join therein.

*Appeal from Dallas District Court.—HON. EDMUND
NICHOLS, Judge.*

TUESDAY, OCTOBER 27, 1908.

ACTION involving plaintiff's claim of dower in lands
of which it is alleged her husband, James Sullivan,
died seised.   Decree for defendants, and plaintiff appeals.
—*Reversed.*

*Burton Russell,* for appellant.

*White & Clarke,* for appellees.

WEAVER, J.—On October 1, 1893, James Sullivan,
being the owner of several forty-acre tracts of land, in-
cluding the southwest quarter of the southeast quarter of
section 21, township 81, range 26, in Dallas County,
united with his wife, Bridget Sullivan, in a conveyance of

the last-described tract to their son, James Sullivan, Jr. The deed so given recites that, in consideration of such conveyance, James Sullivan, Jr., undertook to pay to the grantors, and to the survivor of them, during life, the sum of $100 per year, and all taxes accruing on said property, and that he would not convey or incumber the same during the lifetime of said grantors. It also further recites that, upon any failure to pay said annuity promptly when due, or to pay the taxes within six months after the same became due, or upon any attempt to convey or incumber the title during the life of the grantors, "the title here conveyed shall at once and without any act on the part of said James Sullivan or Bridget Sullivan revert to and vest in the said James Sullivan or his heirs, and all rights, title, interest, or claim of the said James Sullivan, Jr., his heirs or executors in and to said premises shall at once cease and the said James Sullivan and his heirs shall have all the rights, title, claim and right of possession in and to said premises they would have had, had they not made this conveyance." The grantee also assumed the payment of a mortgage of $600 existing on the land. James Sullivan, Jr., took and held possession of the property for a year or two, and then reconveyed it to his father, his wife not joining in the deed, after which the property was occupied, used, and controlled by James Sullivan, Sr., until his death, in the year 1901, and thereafter by his widow, the plaintiff herein. After the death of the son this action was instituted by the mother for the apportionment or partition of her share as widow in all the lands of which her husband died seised, joining therein as defendants Patrick Sullivan, Michael Sullivan, William Sullivan, John Sullivan, and Katy Sands, the surviving children of James Sullivan, Sr., together with Susan Sullivan, surviving widow of James Sullivan, Jr., and Mabel Newell, his only child. Other defendants were named, but their interests

were of a collateral or nominal character, and not involved in the questions to be here considered. In her petition plaintiff alleges that James Sullivan died seised of the tract of land in question, and claims dower or distributive share therein.

The defendants, except Susan Sullivan, widow of James, Jr., and Mabel Newell and her husband, C. C. Newell, made no appearance or defense to the action. The three persons last named appeared and filed answer, the material averments of which, so far as they require consideration on this appeal, are that James Sullivan, Jr., married the defendant Susan Sullivan in the year 1883, and that said marriage relation continued unbroken until his death, long after the conveyance to him of the said land by James Sullivan and Bridget Sullivan in the year 1893, and that the said Susan never in any manner conveyed or released her right of dower therein. By a cross-petition in her behalf the court was also asked to establish her claim to one-third interest in said property. Replying to the cross-petition, plaintiff alleged the making of the deed of October 31, 1903, as hereinbefore described, alleged the failure of James Sullivan, Jr., to pay the annuity stipulated for in said deed, or the taxes accruing on the land, or the mortgage existing thereon, and the consequent reversion of the title under the deed to James Sullivan, Sr. Plaintiff further alleges that because of such failure James Sullivan, claiming a reversion of the title, demanded surrender of the possession and reconveyance of the property, and in pursuance thereof James Sullivan, Jr., did make the reconveyance referred to, and thereupon James Sullivan, Sr., took, and thereafter until his death held, exclusive possession. To this reply the defendants demurred generally, and also stating, as specific ground thereof, that the reply avers no facts constituting any forfeiture of the title of James Sullivan, Jr., and fails to show that proper legal steps were taken

by entry, or otherwise, to divest the dower rights of Susan Sullivan. The demurrer was sustained, and this ruling the plaintiff assigns for error. On final hearing the court found for the defendant Susan Sullivan, upon the matters averred in her cross-petition, and the plaintiff appeals.

I. The appellees move to dismiss the appeal, alleging the insufficiency of the notice to give this court jurisdiction to consider the case. The notice of appeal was served upon the defendants Susan Sullivan, Mabel Newell, and C. C. Newell, or upon their attorneys of record. No service was made, or attempted to be made, upon the other surviving heirs of James Sullivan, Sr. The motion is grounded upon the theory that the defaulting defendants are necessary parties to the appeal, and that failure to serve them with notice constitutes a jurisdictional defect. The point is not well taken. Code, section 4111, provides that "part of several co-parties may appeal; but in such cases they must serve notice of the appeal upon those not joining therein and file proof thereof with the clerk of the Supreme Court." While the language of the provision, literally construed, is quite broad and general, it has long been construed as requiring service upon only such co-parties as may be prejudicially affected by a reversal of the judgment or ruling from which the appeal is taken. In the late case of *Bowman v. Besley*, 122 Iowa, 42, we said that such a defect in service of notice is not jurisdictional, and motion to dismiss was denied because a reversal would work no prejudice to the party not served. In *Oliver v. Perry*, 131 Iowa, 654, we said: "The rule prevails that, unless the co-party will be adversely affected by the decision of this court, omission to serve him will not deprive this court of jurisdiction." In *Ewart v. Ewart*, 126 Iowa, 219, which, like this, was an action for partition, we held that failure to serve parties not adversely affected by the

1. APPEAL: service of notice.

success of the appeal was not jurisdictional, saying "such notice is evidently not necessary, unless the rights of such parties may be prejudicially affected by the appeal." The same rule has been repeatedly affirmed in other cases. For example, see *Wolfe v. Jaffray*, 88 Iowa, 358; *Payne v. Raubinek*, 82 Iowa, 587. It needs but a moment's reflection to see that in this case the interest of the defaulting heirs not served with notice of the appeal cannot be injuriously affected by the success of the appellant. Under the decree of the District Court each of said defendants not served is entitled to two twenty-sevenths of the forty-acre tract, while if the appellant's theory prevails, and the claim of dower by Susan Sullivan is eliminated, the share descending to each of said defendants is one-ninth or three twenty-sevenths. This brings the case squarely within the rule laid down in *Ewart v. Ewart, supra*. The motion to dismiss is denied.

II. Appellees insist that the ruling upon the demurrer was waived by the appellant by proceeding to a trial. The record is not quite clear upon the question thus

2. DEMURRER: waiver of ruling.

raised, but it would seem that the demurrer to the reply was submitted under an agreement to allow the court to rule thereon in its final decree, and this was done. The demurrer did not reach all the matters presented for the hearing and decision of the court, and we think the right to raise the question of the correctness of the ruling was not waived. The appeal is from both the ruling on the demurrer and from the decree, and appellant is entitled to a hearing thereon.

III. Does the record show the appellee Susan Sullivan to have a dower right in this land? Of the general rule of the wife's inchoate right in land of which

3. DOWER: when barred by husband's act.

her husband may be seised at any time during the existence of their marriage relation there is no room to doubt. Code, section 3366; *Lucas*

*v. White,* 120 Iowa, 735. It is also an equally well recognized general proposition that no act or omission on the part of the husband will defeat her right. Park on Dower, 237. But, like all general rules, it is subject to some limitations or exceptions. The husband's omission to pay his debts may subject his land to judicial sale, and if such sale be not collusive, or made with intent to defraud the wife it bars her right. Code, section 3366. So, also, the husband purchasing land may mortgage the same to its full value to secure the purchase price, and although the wife fails or refuses to join in the mortgage, her dower right is subject thereto. *Barnes v. Gay,* 7 Iowa, 26; *Thomas v. Hanson,* 44 Iowa, 651. So, also, where the husband takes title to land, in trust for another, or takes title as a mere intermediary between others. *Langworthy v. Heeb,* 46 Iowa, 64; *McDaniel v. Large,* 55 Iowa, 312; *Association v. Brinley,* 34 N. J. Eq. 438. It also inheres in the very nature of dower that if the husband's seisin is dependent upon a condition precedent or subsequent, a failure to perform the condition which operates to terminate his estate operates as well to terminate the contingent and inchoate interest of the wife. 14 Cyc. 905, 906; *Kusch v. Kusch,* 143 Ill. 353 (32 N. E. 267). To quote the language of the editor of the chapter on Dower in Cyc., supra: "The general rule is that, if the estate of the husband be in its own nature an estate of inheritance, the fact that it has a determinable quality attached to it will not prevent the inception of the right of dower, but when that estate, by reason of its determinable quality, is avoided or defeated, the right of dower falls with it. . . . If the husband's estate of inheritance is held upon condition, by the happening of which the estate will be terminated, the wife's dower will also be dependent upon the happening of such conditions, so that if the estate is terminated upon the happening of the condition and

entry therefor, the right of dower which depends upon it is also terminated."

The *Kusch* case, above cited, from the Illinois court is quite in point. There the owner of land conveyed it to his son by deed, which recited that it was made "for the consideration of a life maintenance and one dollar." Thereafter he instituted an action in equity to set aside the deeds, because of the son's failure to furnish the support. Pending the trial, the action was dismissed as against the son's wife, and upon hearing the evidence the court entered decree for plaintiff for the relief prayed. On appeal the point was raised that the wife had an inchoate right of dower in the real estate, and was therefore a necessary party. Of this contention the court says: "The right of dower is not a vested right, but a mere intangible, inchoate, contingent expectancy. Where there is a defeasible title in the husband, and that title is defeated, the right of dower in the wife also terminates." In another case by the same court, *Hugunin v. Cochrane,* 51 Ill. 302 (2 Am. Rep. 303), the same principle is made applicable to a case quite parallel in its material facts to the case at bar. John C. Hugunin, having purchased land from Leonard C. Hugunin for the stipulated consideration of $2,000, received a conveyance thereof, and gave in return a mortgage upon the premises to secure the payment of the entire purchase price. Later said grantee reconveyed the land to the grantor in payment and discharge of the mortgage debt, and his notes for the payment of the purchase price were surrendered and canceled. John C. Hugunin was a married man at the date of both transactions, but his wife did not join in the reconveyance of the land. Upon the death of John C. his widow brought action for the assignment of dower. Her petition was dismissed by the trial court, and that holding was affirmed on appeal. The court, speaking by Mr. Justice Walker, says: "There is no doubt that the husband of the plain-

tiff became invested with a dry naked fee in law, but there is little doubt that in equity Leonard C. Hugunin held a lien as vendor of the premises. . . . In equity and on the principles of justice this claim does not commend itself to the favorable consideration of a court of justice. All that can be said is that he (the husband of plaintiff in error) had the mere form of a title, while he or the plaintiff in error did not pay a farthing for the title he held. And as Leonard C. Hugunin did no act to waive his vendor's lien against the property, he might have held the notes until their maturity, and then enforced his lien against the property to the entire exclusion of any right of dower on the part of plaintiff in error." After citing the various circumstances in which exceptions are made to the rule that the widow shall be endowed in all lands of which the husband was seised of an estate of inheritance either at law or in equity, the court adds: "It appears to us that the case at bar is fully within the reason of these exceptions. To allow the widow in this case to recover dower would work manifest injustice and wrong. . . . As this vendor's lien did exist, and the land was reconveyed for its extinction and to obtain a release from the payment of the purchase money, we have no hesitation in holding that it passed free from the dower of the wife." The same principle was affirmed in *Talbott v. Armstrong,* 14 Ind. 254. To the same general effect is *Bassell v. Caywood,* 54 W. Va. 241 (46 S. E. 159, 66 L. R. A. 880). There the husband conveyed land to satisfy a claim which was paramount to the wife's right of dower, and it was held that the wife had no right of dower which she could thereafter assert against the land, but her right did attach to the surplus realized from the sale, over and above an amount sufficient to extinguish the lien. Of course no case goes to the extent of holding that a collusive or colorable recovery, once made for the purpose of defrauding the wife, will be

upheld.   The doctrine of the cited cases is clearly just and equitable, and has our approval.

We have, then, to consider whether the record brings the case at bar within the operation of the principles thus affirmed. · Of this we think there is no room to doubt whether we treat it as a case of re-entry by the grantor upon failure of a condition subsequent, or a simple reconveyance of the land in satisfaction of James Sullivan's vendor's lien.   The reply to which the demurrer was upheld avers the entire failure of James Sullivan, Jr., to pay the mortgage debt assumed, or the annuity, to the grantors, or the taxes accruing on the property, and that by reason thereof the grantor re-entered the property, and thereafter continued in exclusive possession and control.   All this the demurrer admits.   If we waive the admission by the demurrer, and look alone to the evidence, we are still forced to the conclusion that Susan Sullivan is not entitled to dower.   True some of the witnesses were incompetent to testify to some of the matters recited by them, but there is enough disclosed from competent sources to make it entirely clear that James Sullivan, Jr., soon concluded that his contract was not a profitable one, and abandoned any attempt to comply with the conditions of the deed, and that to free himself from his obligation he reconveyed the title to his father.   There is no claim, nor is there any evidence, indicating that such reconveyance was intended to defraud Susan Sullivan.   Dower is favored by the courts, but it is not to be allowed at the expense of clearly inequitable results, unless the statute clearly requires it.   Such is not the case here.   The claim of dower can be of no higher quality than the seisin of the husband at the instant when the concurrence of such seisin and the wife's coverture give it birth.   In this instance, when James Sullivan, Jr., abandoned the attempt to perform the stipulations which were made the express consideration of the conveyance, he stood vested with the

naked legal title to the land, which he held subject to the vendor's lien of James Sullivan, Sr. *Noyes v. Kramer,* 54 Iowa, 22. Had the latter foreclosed the lien by action, and sold the property, such sale would have barred the appellee's claim of dower, even though she was not made a party to the proceeding. We see, therefore, no reason for refusing to hold that the settlement and satisfaction of the debt and lien by a reconveyance of the property, in the absence of any showing of fraud, shall have a like effect.

The decree of the District Court is reversed, and cause remanded, for entry of a decree in harmony with this opinion.—*Reversed.*